W. H. SIKES v. W. J. PARKER, Admr. of J. McK. MULFORD.

*Diligence—Evidence of Transactions with Deceased Persons— New Trial—Partnership.*

1. Upon the trial of an issue as to the existence of a partnership between the plaintiff and the intestate of defendant, the former is not a competent witness to prove the fact of the partnership, nor the fact that his property went into the possession of the intestate as a portion of the partnership stock, unless it affirmatively appears that his knowledge of such facts was not derived from conversations and transactions with the deceased.

2. A new trial for newly discovered testimony will not be granted in the Supreme Court, unless it clearly appears that the applicant therefor used all reasonable diligence to procure it on the former trial; that it is not merely cumulative or corroborative, and that it is necessary to prevent gross injustice, and that another trial will produce a different result.

3. It is not sufficient in an application for a new trial, for applicant to state generally that he exercised diligence in his attempts to secure the evidence; he must set out the particulars of his efforts, so that the Court may see and judge of his diligence.

(*Lockhart* v. *Bell*, 90 N. C., 499; *Bledsoe* v. *Nixon*, 69 N. C., 89; *Shehan* v. *Malone*, 72 N. C., 59; *Henry* v. *Smith*, 78 N. C., 27; *Simmons* v. *Mann*, 92 N. C., 12, cited and approved).

CIVIL ACTION, tried before *MacRae, Judge*, at Fall Term, 1885, of BLADEN Superior Court.

The plaintiff alleged that he and the intestate of the defendant, in 1871, entered into a copartnership in the general mercantile business, to be carried on in the name of the intestate; that such business was so conducted for several years, until the death of the intestate, when the defendant took into his possession all of the partnership assets, and refused to account with him therefor. The defendant answered that he had "no knowledge or information sufficient to form a belief as to the truth of these allegations."

The following issues were, by agreement of counsel, submitted, as covering the matter to be submitted to the jury:

Was the plaintiff W. H. Sikes a co-partner in the business of J. McK. Mulford from 1871 to the death of said Mulford?

The plaintiff offered himself as a witness, and his counsel asked the following questions: Were you or were you not a partner of J. McK. Mulford? Objection by defendant. Objection sustained and plaintiff excepted.

The plaintiff testified that before Mulford came to Elizabethtown, and at the time he came, plaintiff was doing a liquor and grocery business in the store which Mulford afterwards occupied.

The plaintiff's counsel asked him the following questions: What became of your goods and business at the time that Mulford came to Elizabethtown? This question was asked, as stated by counsel for plaintiff, for the purpose of establishing the fact of a partnership, showing that the plaintiff's goods and business went into the hands of Mulford. Objections by defendant. Objections sustained. Plaintiff excepted.

W. A. Atkinson, a witness for plaintiff, was asked the question: Did you ever hear plaintiff at any time before the commencement of this suit (if so, when), say that he was a partner with Mulford? Objection by defendant. Objection sustained. Plaintiff excepted.

Much testimony was offered on each side.

The jury responded to the issue—No.

The appellant moved in the Supreme Court for a new trial, upon the ground of newly discovered evidence material to the issue. This motion was supported and opposed by affidavits.

*Mr. Thomas S. Sutton,* for the plaintiff.
*Mr. C. C. Lyon,* for the defendant.

MERRIMON, J. The plaintiff was examined on the trial as a witness in his own behalf. In the very nature of the matter in respect to which the question embraced by both the exceptions were propounded, he would, in any answer he might make to

them, unless he should answer in the negative, almost neces-
sarily have to testify concerning a personal transaction or com-
munication between himself and the intestate of the defendant.
This he could not do, as the defendant was not examined. The
Code, §590. The fact to be proven was that of a partner-
ship between the plaintiff and the intestate.

Ordinarily, the partnership, if it existed, would in its nature
imply such a transaction or communication—that they had con-
versations and an agreement, each with the other, of which each
had knowledge from the other personally. About such a matter,
each would see and talk with, and have transactions with the
other. This would be in the usual order of things. It might,
perhaps, be possible that the plaintiff could have answered the
questions thus put to him without testifying to such a transaction
or communication ; but if he could, it ought to have appeared
that he could, in order to render his answers competent. He
might have been interrogated as to the source of the informa-
tion he had pertinent to the matter inquired about, with a view
to determine the question of the competency of such answers as
he might make. He was competent to testify that he did not
derive his information from a transaction or communication
between himself and the intestate. *Lockhart* v. *Bell*, 90 N.
C., 499.

The plaintiff was first interrogated as to the existence of the
alleged partnership, and obviously it was expected and intended
that he should testify that it did exist. This he could not do,
because in doing so he would be a witness "concerning a personal
transaction or communication between himself and the intestate."
The Court having disallowed an answer to the first question, the
second one was put to the witness, the counsel saying, that its
purpose was to prove the partnership "by showing that the
plaintiff's goods and business went into the hands of the intes-
tate." The witness could not testify as proposed for the reasons
stated above. Certainly, unless it appeared to the contrary, the
intestate if living, could contradict the plaintiff, because he would

have had knowledge of the matter—the transaction in respect to which the plaintiff proposed to testify. The purpose of the statute is to prevent the surviving party from testifying in such case. The deceased cannot be heard, and in his absence by death, the surviving party shall not be heard. So that, the exceptions specified in the record cannot be sustained.

The plaintiff moved in this Court for a new trial, upon the ground that he had discovered since the trial in the Superior Court, much evidence going to prove the alleged partnership, that he did not know of at the trial, and that he could not by due diligence on his part have then produced. It has been frequently held, that this Court will always entertain such a motion with caution and scrutiny, and will not grant a new trial except in a clear case, coming within the well settled rules of practice in such respect. It is unnecessary to here restate the reasons upon which this rule is founded. They will be found stated in ample clearness in *Bledsoe* v. *Nixon*, 69 N. C., 81; *Shehan* v. *Malone*, 72 N. C., 59; *Henry* v. *Smith*, 78 N. C., 27; *Simmons* v. *Mann*, 92 N. C., 12.

It is not sufficient that the defendant has discovered evidence pertinent and competent, since the trial, to prove his case; he must show that he used reasonable diligence before the trial to produce evidence appropriate and sufficient for that purpose. Did he do this? Let us inquire. It appears that the intestate did an extensive business in the town of Elizabethtown for many years next before his death, as a merchant, and he had many, continuous, and varied transactions with many people in connection with his mercantile and other business. He must have bought and sold goods and other property from time to time, and continuously. It is probable therefore, that many persons had more or less knowledge of the character of his business, and whether or not he did business on his own sole account exclusively, or in partnership with the plaintiff or some other person. He must have kept numerous books of account; invoices of goods purchased by him from time to time, purchased goods from many

persons in the markets, have written many letters on business, executed conveyances and other papers in writing, all showing to some extent the nature of his business transactions.   He very probably had salesmen, book-keepers, relatives, and friends, not a few, familiar with his business relations.   It would seem, therefore, to have been comparatively easy to find witnesses who could testify fully as to his  business and business relations.   In support of the motion for a new trial, the plaintiff states in his affidavit that in order to prepare the above action for trial, and to prove the affirmative of the issue which was raised by the pleadings, he issued subpœnas up to the term of the Court at which the said action was tried, for every person who he knew, or whom he had any reason to believe, knew anything about the business transactions of the plaintiff and the defendant's intestate, and that in order to ascertain who did know anything about the matters involved, he made diligent inquiries.

It will be seen that he does not state that he made personal inquiry of any person as to what he might know of the intestate's business and business relations, and the alleged partnership.   He only summoned such persons as "he knew, or whom he had any reason to believe, knew anything about the business transactions of the plaintiff and the defendant's intestate."   He does not state what reason he acted upon, nor the names of the persons whom he summoned, nor their opportunity to be informed.

He does not state that he made such inquiry of persons who sold the intestate goods and other property from time to time and frequently, to whom he gave his notes for money, to whom he frequently wrote, and who wrote to him, on business, to whom he frequently sold goods and other property, his salesmen, his book-keepers, his intimate friends.   While he says that he "made diligent inquiry" and effort to produce evidence, in general terms, he fails to state what he did, of whom he made inquiry, what they knew, and what opportunity they respectively had to obtain and have information, so that the Court could see

and judge of the character and measure of his diligence. This he ought to have done, if not with particularity, certainly in a summary manner. The Court, not himself, must judge of the reasonableness of his diligence, and to this end what he did, what effort he made, must appear. *Shehan* v. *Malone, supra; Henry* v. *Smith, supra.* The plaintiff further states that the defendant had possession of his intestate's books of account, papers, documents, &c., and before the trial declared, (to whom does not appear), that there was nothing in them that indicated the existence of the alleged partnership, and therefore he did not summon or require him to produce them; that since the trial he is informed that the defendant has said he has the inventory of the stock of goods taken at the time the partnership was formed; but he does not state that he ever asked to be allowed to examine the books and papers referred to, nor did he ask the Court to require the production of them for his inspection, as he might have done. In this there would seem to have been gross neglect. So that it does not appear to us, that the plaintiff exercised reasonable diligence in his efforts to obtain the evidence before the trial that he has since then discovered.

Moreover, the Court will not grant a new trial, if the newly-discovered evidence is simple or mainly cumulative and corroborative. What the precise nature of the evidence produced on the trial was—whether direct or circumstantial, or both—does not appear, as it should on applications like this, so that the Court could see the application and bearing of the new evidence. It is said in the case settled upon appeal, however, that "much testimony was offered on each side." It may be fairly inferred from this, and the nature of the issue, that the evidence was varied in its nature and application. So taking the fact to be, the newly-discovered evidence is of a very similiar character. The names of several persons are given together, who, the plaintiff states, would testify to conversations they respectively had with the intestate, in which he said in some connection that does

not appear, that there was a partnership, and he further states that one of the persons heard a private conversation between the plaintiff and the intestate, in which they "talked freely about the conduct and management of the business;" but he does not state how such a conversation came about, or its purpose. They seem to have been loose, casual and indefinite. The affidavits of the persons named, as to what they know, are not produced, with one or two exceptions, and those produced are indefinite and unsatisfactory. Indeed, the evidence, so far as we can see and judge, is mainly, if not altogether, cumulative. It is fragmentary, indefinite and uncertain, and adapted in its nature only to turn the scale if the issue were left in doubt. Such newly-discovered evidence does not entitle the plaintiff to have his motion granted. To do this, the evidence should be clear, strong and convincing, if not conclusive. The object in granting a new trial is *not* to afford the party asking for it simply another opportunity to correct his mistakes, and test fortune a second time, but only to prevent probable, gross, substantial injustice, occasioned by no inexcusable neglect or default of the party complaining.

We do not deem it necessary to advert to the affidavits produced by the defendant in opposition to the plaintiff's motion, further than to say that they tend strongly to show that the motion is without real merit.

The motion must be denied and the judgment affirmed.

No error.                                                    Affirmed.